1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

9  MARRITTE FUNCHES,                    )
                                        )
10             Plaintiff,               )        3:09-cv-00343-LRH-VPC
                                        )
11  vs.                                 )
                                        )        **ORDER**
12  E.K. McDANIEL, *et al.*,            )
                                        )
13             Defendants.              )
    _____/

14

15        This is a *pro se* prisoner civil rights action filed pursuant to 42 U.S.C. § 1983.  By order filed

16  February 11, 2010, the Court reviewed plaintiff's original complaint.  (Docket #22).  The order

17  allowed some claims to proceed, dismissed some claims with prejudice, and dismissed other claims

18  with leave to amend.  (*Id.*).  Before the Court is plaintiff's amended complaint (Docket #25),

19  plaintiff's motion for the appointment of counsel (Docket #28), and plaintiff's motion for a

20  temporary restraining order and preliminary injunction (Docket #29 and #30).

21  **I.  Screening of the Amended Complaint**

22        **A.  Screening Standard**

23        Pursuant to the Prisoner Litigation Reform Act (PLRA), federal courts must dismiss a

24  prisoner's claims, "if the allegation of poverty is untrue," or if the action "is frivolous or malicious,"

25  "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant

26  who is immune from such relief."  28 U.S.C. § 1915(e)(2); 28 U.S.C.§ 1915A.  Dismissal of a

27  complaint for failure to state a claim upon which relief may be granted is provided for in Federal

28  Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under Section 1915(e)(2)

1    when reviewing the adequacy of a complaint or amended complaint.

2          Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v.*

3    *Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a

4    claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the

5    claim that would entitle him or her to relief.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.

6    1999).  In making this determination, the Court takes as true all allegations of material fact stated in

7    the complaint, and the Court construes them in the light most favorable to the plaintiff.  *See*

8    *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).  Allegations in a *pro se* complaint are

9    held to less stringent standards than formal pleadings drafted by lawyers.  *See Hughes v. Rowe*, 449

10   U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*); *see also Balistreri v.*

11   *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

12         All or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the

13   prisoner's claims lack an arguable basis either in law or in fact.  This includes claims based on legal

14   conclusions that are untenable (*e.g.* claims against defendants who are immune from suit or claims

15   of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful

16   factual allegations (*e.g.* fantastic or delusional scenarios).  *See Neitzke v. Williams*, 490 U.S. 319,

17   327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

18         **B.  Amended Complaint (Docket #25)**

19         In the amended complaint, plaintiff names forty-nine defendants, including John and Jane

20   Does, who are prison officials and/or employees of the State of Nevada.  The defendants are as

21   follows: E.K. McDaniel, Bill Donat, Dwight Neven, Mike Stolk, Martin Sorenson, Gerald

22   Thompson, Troy Willis, Terri Curto, Gene Christensen, Steven MacArthur, James Stogner, Adam

23   Endel, Howard Skolnik, Bruce Bannister, Terrance Deeds, Sean Donahue, Tom Stubbs, Richard

24   Ashcraft, Glenn Perkins, Adam Watson, James Baca, Randall Nixon, Rick Stalnaker, Janice Daniel,

25   Kathy King, Delmar Snider, Susan Taylor, Kay Long, James Benedetti, John Doe 1-17, and Jane

26   Doe 1-3.  Plaintiff alleges the defendants violated his rights under the First, Fourth, Fifth, Eighth,

27   and Fourteenth Amendments.  Plaintiff describes the nature of the case as: "Subjecting plaintiff to an

28   unyielding systematic pattern of abuse and harassment spaning [sic] over five years, three counties,

and four prisons, including conspiracy, deliberate indifference to plaintiff's serious medical needs, denial of due process, false arrest, malicious prosecution, cruel and unusual punishment, assault, deprivation of property with no due process, just cause or compensation [and] defendants intentionally discriminated against plaintiff for his religious and political beliefs." (Amended Complaint, Docket #25, at p. 15). Plaintiff seeks general, compensatory, and punitive damages, declaratory judgment, and injunctive relief.

### 1. Count I

Plaintiff alleges that defendants violated his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Plaintiff alleges that he was falsely accused of the stabbing murder of inmate Carl Green, at Ely State Prison, in April 2004. Plaintiff was tried and acquitted on the murder charges in September 2007. Plaintiff alleges the existence of a conspiracy to maliciously prosecute him for the murder of inmate Carl Green. Plaintiff alleges defendants Martin Sorenson, Mike Stolk, and Gerald Thompson falsely testified that, before his death, the victim identified plaintiff as his killer. Plaintiff claims that Thompson solicited false testimony from medical staff. Plaintiff claims that defendants Troy Willis and Terri Curto committed perjury during trial, in furtherance of the conspiracy. Plaintiff claims that Willis and Curto both testified that, when asked who stabbed him, the victim identified his attacker, yet video and audio recordings played in court showed that no such occurrence took place. Plaintiff claims that defendants Sorenson, Stolk, and Thompson refused to take statements of witnesses that would have exonerated him and failed to investigate other credible leads. He also claims that Sorenson, Stolk, and Thompson paid a jail informant, James Beverly, to lie under oath against plaintiff and defendant E. K McDaniel approved the payment but failed to ensure that the informant's information was credible. Plaintiff claims that defendants Sorenson, Stolk, and Thompson "used false statements from a confidential informant who did not exist, in order to further their conspiracy to maliciously prosecute plaintiff, and thus did cause plaintiff to face trial, and the death penalty, for crimes he did not commit [sic]." Plaintiff further alleges that defendants Thompson and Dr. Gene Christensen committed perjury at plaintiff's preliminary hearing in 2004. Plaintiff claims that he did not murder Green, but rather, Dr. Christensen caused Green's death during surgery. Plaintiff claims that defendant Dr. Steven MacArthur conspired to cover up

1   Dr. Christensen's botched surgery, allowing plaintiff to be charged with the murder.

2   Plaintiff also claims that defendants James Stogner (chaplin at ESP) discriminated against

3   him for his religious beliefs during a court hearing in 2005.  Specifically, plaintiff alleges that

4   defendant Stogner testified under oath in court that, based on plaintiff's religious beliefs, plaintiff

5   was a suicide risk and that he feared for his safety in plaintiff's presence.  Plaintiff claims that, as a

6   result of defendant Stogner's testimony, he was forced to wear a 50,000 volt shock belt, in addition

7   to wrist and leg restraints, during his criminal proceedings.  Plaintiff alleges that wearing the shock

8   belt caused him physical pain and psychological distress.

9   Plaintiff claims that because he was wrongfully accused of murdering inmate Carl Green, he

10  remains in segregation and is confined to his cell 24 hours a day.  Plaintiff alleges mental and

11  physical harm from these conditions of confinement.

12  **a. Malicious Prosecution Claim**

13  To prevail on a § 1983 claim for malicious prosecution, "a plaintiff must show that the

14  defendants prosecuted [him] with malice and without probable cause, and that they did so for the

15  purpose of denying [him] equal protection or another specific constitutional right." *Awabdy v. City*

16  *of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana*, 68 F.3d

17  1180, 1189 (9th Cir. 1995)).  Malicious prosecution suits may be brought against persons who have

18  wrongfully caused charges to be filed.  *Awabdy*, 368 F.3d at 1066.  *Galbraith v. County of Santa*

19  *Clara*, 307 F.3d 119, 1126-27 (9th Cir. 2002).  The Ninth Circuit "looks to [relevant state] law to

20  determine the legal effect of the state court's action because [it has] incorporated the relevant

21  elements of the common law tort of malicious prosecution into its analysis under § 1983." *Awabdy*,

22  368 F.3d at 1066 (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987)); *Heck v.*

23  *Humphrey*, 512 U.S. 477, 483 (1994).  In malicious prosecution cases, the Nevada Supreme Court

24  holds that an indictment of a defendant "constitutes prima facie evidence that probable cause for

25  criminal prosecution exists," however, the court has noted that "the prima facie evidence [can] be

26  rebutted with a relevant showing of false testimony or suppressed facts." *Jordan v. State ex rel*

27  *Dept. of Motor Vehicles and Public Safety*, 110 P.3d, 49, n.65 (Nev. 2005).

28  In the instant case, plaintiff has alleged that defendants Sorenson, Stolk, Thompson, Willis,

4

1   Curto, Christiansen, MacArthur, and McDaniel, who were involved in the investigation leading to

2   his indictment and prosecution for the murder of inmate Carl Green, purposefully suppressed

3   exculpatory evidence, made misrepresentations regarding the facts of the alleged crime, and coerced

4   witnesses to falsely testify.  A liberal construction of the amended complaint suggests that plaintiff

5   may be able to demonstrate a lack of probable cause which led to his indictment and prosecution for

6   the murder of inmate Carl Green, for which plaintiff was ultimately acquitted.  The malicious

7   prosecution claim may proceed against defendants Sorenson, Stolk, Thompson, Willis, Curto,

8   Christensen, MacArthur, and McDaniel.

9                                  **b. Due Process Claim**

10          In order to state a cause of action for deprivation of procedural due process, a plaintiff must

11   first establish the existence of a liberty interest for which the protection is sought.  In *Sandin v.*

12   *Connor*, 515 U.S. 472, 487 (1995), the Supreme Court abandoned earlier case law which had held

13   that states created protectable liberty interests by way of mandatory language in prison regulations.

14   *Id*.  Instead, the Court adopted an approach in which the existence of a liberty interest is determined

15   by focusing on the nature of the deprivation.  *Id*.  In doing so, the Court held that liberty interests

16   created by prison regulations are limited to freedom from restraint which "imposes atypical and

17   significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.

18          A prisoner has a liberty interest when confinement imposes an "atypical and significant

19   hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.  In *Sandin*,

20   the Court focused on three factors in determining that plaintiff possessed no liberty interest in

21   avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as

22   discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and

23   conditions in the general population showed that the plaintiff suffered no "major disruption in his

24   environment;" and (3) the length of the plaintiff's sentence was not affected.  *Sandin*, 515 U.S. at

25   486-87.

26          Where a protected liberty interest exists, the Supreme Court has set out the following

27   procedural due process requirements for disciplinary detention of a prisoner: (1) written notice of the

28   charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of

1    the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders

2    of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to

3    call witnesses in his defense, when permitting him to do so would not be unduly hazardous to

4    institutional safety or correctional goals; (5) legal assistance to the prisoner where the prisoner is

5    illiterate or the issues presented are legally complex.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

6            In the instant case, plaintiff claims that he was not allowed to confront his accusers

7    concerning charges stemming from the death of inmate Carl Green.  Plaintiff alleges that defendants

8    created a witness who did not exist and used statements from this non-existent witness to have

9    plaintiff charged.  Plaintiff alleges that he remains in segregation 24 hours a day as a result of the

10   charge of murder made against him.  Plaintiff has alleged sufficient facts to state a cognizable due

11   process claim against defendants Sorenson, Stolk, Thompson, and McDaniel.

12                          **c.  Eighth Amendment Claim**

13           To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

14   conditions must involve "the wanton and unnecessary infliction of pain."  *Rhodes v. Chapman*, 452

15   U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials must

16   provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  *Id*.;

17   *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1246

18   (9th Cir. 1982).  Plaintiff's allegation that he remains in segregation, confined to his cell 24 hours a

19   day, causing physical harm to plaintiff, states a cognizable claim under the Eighth Amendment.  In

20   addition, plaintiff's allegation that he was unjustifiably forced to wear a 50,000 volt shock belt,

21   which caused him physical pain, states a cognizable Eighth Amendment claim.  Plaintiff's Eighth

22   Amendment claim may proceed against defendants Sorenson, Stolk, Thompson, McDaniel, and

23   Stogner.

24                          **d.  Conspiracy Claim**

25           Plaintiff claims that defendants engaged in a conspiracy to maliciously prosecute him for the

26   murder of inmate Carl Green.  To state a claim for a conspiracy to violate one's constitutional rights

27   under 42 U.S.C. §1983, a plaintiff must state specific facts to support the existence of the claimed

28   conspiracy.  *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989); *see also  Branch v.*

1   *Tunnell*, 937 F.2d 1382, 1386 (9th Cir. 1991) (when pleading a § 1983 claim requiring a showing of

2   subjective intent, a plaintiff is subject to a heightened pleading standard).  A complaint alleging a §

3   1983 conspiracy must allege facts showing an agreement or meeting of the minds of the

4   conspirators.  *See Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989).  The

5   complaint must also include "nonconclusory allegations containing evidence of unlawful intent."

6   *See Branch*, 937 F.2d at 1386.  Plaintiff has alleged sufficient facts to state a cognizable claim for

7   conspiracy to maliciously prosecute him.  The conspiracy claim may proceed against defendants

8   Sorenson, Stolk, Thompson, Willis, Curto, Christensen, MacArthur, and McDaniel.

9   **e.  First Amendment Claim**

10   "[A] prison inmate retains those First Amendment rights that are not inconsistent with his

11   status as a prisoner or with the legitimate penological objectives of the corrections system.  *Pell v.*

12   *Procunier*, 417 U.S. 817, 822 (1974).  Although the first line of Count I contains the word "First

13   Amendment," plaintiff has alleged no facts to support any claim of a First Amendment violation,

14   and thus fails to state a claim. The Court has previously given plaintiff leave to amend this claim,

15   but he is apparently unable to state a cognizable claim.  As further opportunity for amendment

16   would be futile, the First Amendment claim is dismissed, with prejudice.

17   **f.  Fourth Amendment Claim**

18   In the first line of Count I, plaintiff alleges a Fourth Amendment violation, without any

19   factual allegations to support such a claim.  The Fourth Amendment to the United States

20   Constitution protects against unreasonable searches and seizures.  The reasonableness of searches

21   and seizures by prison officials is analyzed in light of the *Turner* factors.  *See Thompson v. Souza*,

22   111 F.3d 694, 699 (9th Cir. 1997), citing *Turner v. Safley*, 482 U.S. 78, 89 (1997).  The *Turner*

23   factors focus on whether the actions of prison officials were reasonably related to legitimate

24   penological interests.  *Turner*, 482 U.S. at 89.  Moreover, a prison has no Fourth Amendment right

25   of privacy in their cells and the contents thereof.  *See Hudson v. Palmer*, 468 U.S. 517, 525-26

26   (1984); *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996).

27   In the instant case, plaintiff has alleged no facts to support any claim of a Fourth Amendment

28   violation, and thus fails to state a claim. The Court has previously given plaintiff leave to amend this

1   claim, but he is apparently unable to state a cognizable claim.  As further opportunity for amendment

2   would be futile, the Fourth Amendment claim is dismissed, with prejudice.

3                                  **g.  Religious Discrimination Claim**

4          Prisoners are protected by the Equal Protection Clause from intentional discrimination based

5   on their religion.  *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other*

6   *grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).  To establish a violation of the

7   Equal Protection Clause, a prisoner must allege evidence of discriminatory intent.  *See Washington*

8   *v. Davis*, 426 U.S. 229, 239-40 (1976); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003);

9   *Freeman*, 125 F.3d at 737.

10         Plaintiff claims that defendant James Stogner, chaplin at Ely State Prison, discriminated

11   against him for his religious beliefs during a court hearing in 2005.  Specifically, plaintiff alleges

12   that defendant Stogner testified under oath in court that, based on plaintiff's religious beliefs,

13   plaintiff was a suicide risk and that he feared for his safety in plaintiff's presence. The facts alleged

14   by plaintiff do not indicate any evidence of discriminatory intent by defendant Stogner.  Plaintiff

15   fails to state a claim for religious discrimination.  The Court has previously given plaintiff leave to

16   amend this claim, but he is apparently unable to state a cognizable claim.  As further opportunity for

17   amendment would be futile, the religious discrimination claim is dismissed, with prejudice.

18                                  **2.  Count II**

19         Plaintiff alleges that the defendants violated his Fifth, Eighth, and Fourteenth Amendment

20   rights.  Plaintiff claims that in April 2004, pending investigation of the murder of inmate Carl Green,

21   defendant Warden McDaniel placed him in administrative segregation and classified him as "High

22   Risk Potential" (HRP), without affording him due process.  Plaintiff alleges that, even though he

23   was acquitted on the murder charges in September 2007, he remains classified as HRP and continues

24   to be housed in administrative segregation.  Plaintiff alleges that he has not received a hearing or

25   opportunity to present evidence on his behalf regarding his continued HPR classification and

26   housing in administrative segregation.

27         Plaintiff alleges that, because of his HRP classification, all procedures governing his

28   movement and medical care are subject to approval by defendant McDaniel.  Plaintiff allegedly

suffers from urinary tract problems that require treatment by a urologist.  Plaintiff alleges that he has been denied medical treatment because of his classification.  Plaintiff claims that, after his transfer from Ely State Prison to High Desert State Prison ("HDSP") in January 2008, defendants McDaniel and Warden Dwight Neven conspired to keep plaintiff classified as HRP, which impeded attention to his serious medical needs.  Plaintiff was not permitted to be seen by a specialist outside the prison because of his HRP classification.

Plaintiff claims that defendant Howard Skolnik, Director of the Nevada Department of Corrections, ignored the plaintiff's numerous reports and pleas for relief.  Plaintiff states that defendant Dr. Bruce Bannister, head of medical services for the Department of Corrections, ignored plaintiff's numerous complaints and pleas for relief, failed to investigate plaintiff's complaints, and failed to ensure that plaintiff's HRP classification would not be used to deny him necessary medical care.

### a.  Due Process Claim

Plaintiff claims that he was denied due process because he has been classified as HRP and housed in administrative segregation since 2004.  In administrative segregation, plaintiff alleges that he is confined to his cell 23-24 hours per day, and he faces many more restrictions than the general prison population.  Plaintiff alleges that he has not been afforded hearings and an opportunity to present evidence regarding his continued HRP classification and administrative segregation housing.

In *Sandin v. Connor*, 515 U.S. 472, 487 (1995), the Supreme Court adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. *Id.*  In doing so, the Court held that liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.  When a prisoner's classification status imposes an atypical and significant hardship on a prisoner, it implicates due process protections.  *Neal v. Shimoda*, 131 F.3d 818, 827-28 (9th Cir. 1997).  The Ninth Circuit has ruled that indefinite confinement to administrative segregation gives rise to a due process liberty interest.  *See Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996), *as amended by* 135 F.3d 1318 (9th Cir. 1998); s*ee also*

1  *Jackson v. Carey,* 353 F.3d 750, 755-57 (9th Cir. 2003); *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th

2  Cir. 2003).  Plaintiff states a cognizable due process claim based on his indeterminate confinement

3  in administrative segregation and his continued HRP classification against defendants McDaniel,

4  Neven, and Skolnik.

5  **b.  Claim of Deliberate Indifference to Medical Needs**

6  A prisoner's claim of inadequate medical needs does not constitute cruel and unusual

7  punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical

8  needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The "deliberate indifference" standard

9  involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective

10  terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*,

11  501 U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of

12  mind," which entails more than mere negligence, but less than conduct undertaken for the very

13  purpose of causing harm.  *Farmer v. Brennan*, 511 U.S. at 837.  A prison official does not act in a

14  deliberately indifferent manner unless the official "knows of and disregards an excessive risk to

15  inmate health or safety." *Id.*  Plaintiff alleges that he informed defendants McDaniel and Neven of

16  his serious medical needs, but defendants have ignored his need for medical treatment.  Plaintiff

17  states a cognizable Eighth Amendment deliberate indifference claim against defendant McDaniel

18  and Neven.

19  **c.  Supervisory Liability**

20  Supervisory personnel are generally not liable under § 1983 for the actions of their

21  employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a

22  supervisory position, the causal link between him and the claimed constitutional violation must be

23  specifically alleged.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979);  *Mosher v. Saalfeld*,

24  589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979).  A supervisory defendant must

25  either: personally participate in the alleged deprivation of constitutional rights; know of the

26  violations and fail to act to prevent them; or promulgate or implement a policy "so deficient that the

27  policy itself is a repudiation of constitutional rights" and is "the moving force of the constitutional

28  violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor v. List*, 880 F.2d 1040, 1045

(9th Cir. 1989).  Plaintiff alleges that he informed defendant Howard Skolnik and Dr. Bruce Bannister of his medical condition and his pleas for medical care.  Plaintiff alleges that defendants Skolnik and Bannister ignored plaintiff's numerous complaints about his need for medical care and his pleas for relief.  Plaintiff states a cognizable claim for supervisory liability against defendant Skolnik and Bannister for violation of his constitutional rights.

### 3.  Count III

Plaintiff alleges that the defendants violated his Eighth and Fourteenth Amendment rights. Plaintiff claims that in September 2007, defendants John Does 1-4 transported him from Ely State Prison to Nevada State Prison, and because of plaintiff's HRP classification, he was treated differently than other inmates while being transported.  Plaintiff states that defendants John Does 1 and 2 placed him in handcuffs with a black box tightly strapped to his waist, so as to allow no movement of his hands or arms.  Plaintiff alleges that he was placed in leg irons and padlocked inside a small steel cage in the transport bus, with barely room to sit down.  Plaintiff claims that he was not allowed to drink any water or use the toilet during the twelve-hour transport.  Plaintiff states that he told defendant John Doe 1 that he has medical issues and would need to use the urinal but his request was denied.  Plaintiff claims that he suffered "agonizing kidney and bladder pain" and "extreme thirst" as well as long lasting pain from the restraints.  Plaintiff claims that he experienced the same restrictive conditions when transported from Nevada State Prison back to Ely State Prison in October 2007.  Plaintiff alleges that prior to the October 2007 transport, he informed defendant Warden Bill Donat about the conditions of his transport in September 2007.  Plaintiff alleges that due to the pain caused by the initial transport, he sought medical attention and was diagnosed with an enlarged prostate.  Plaintiff states that he has been forced to endure these same conditions of transport on at least two other subsequent occasions.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1246

1   (9th Cir. 1982).  Where a prisoner alleges injuries stemming from unsafe conditions of confinement,

2   prison officials may be held liable only if they acted with "deliberate indifference to a substantial

3   risk of serious harm."  *Frost v. Agnos*, 152 F.3d 1124, (9th Cir. 1998) (citing *Farmer v. Brennan*,

4   511 U.S. 825, 835 (1994).  The deliberate indifference standard involves an objective and a

5   subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious."

6   *Farmer v. Brennan*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, the

7   prison official must "know of and disregard an excessive risk to inmate health or safety."  *Id*. at 837.

8   Thus, "a prison official may be held liable under the Eighth Amendment for denying humane

9   conditions of confinement only if he knows that inmates face a substantial risk of harm and

10   disregards that risk by failing to take reasonable measures to abate it."  *Farmer v. Brennan*, 511 U.S.

11   at 835.

12          In the instant case, plaintiff alleges that, on at least three occasions, he has been subjected to

13   cruel and unusual conditions of confinement during transport from one prison to another.

14   Specifically, he alleged he was placed in handcuffs with a black box tightly strapped to his waist, so

15   as to allow no movement of his hands or arms; he was placed in leg irons and padlocked inside a

16   small steel cage in the transport bus, with barely room to sit down; he was not allowed to drink any

17   water or use the toilet during the twelve hour drive.  Plaintiff's requests to use the toilet during

18   transport were denied, and as a result, plaintiff suffered "agonizing kidney and bladder pain" and

19   "extreme thirst" as well as long lasting pain from the restraints.  Plaintiff's allegations state a

20   cognizable claim for deliberate indifference based on the conditions of confinement during his

21   transport between prisons.  Plaintiff states a cognizable claim against the Doe defendants 1-4, as

22   well as Bill Donat, whom he told about the transport conditions, but who allowed plaintiff to be

23   transported again under the same conditions.

24          **4.  Count IV**

25          Plaintiff alleges that defendants violated his First, Fourth, Fifth, Eighth, and Fourteenth

26   Amendment rights.  Plaintiff claims that, during his transfer from Ely State Prison to High Desert

27   State Prison in January 2008, defendants Terrance Deeds, Sean Donahue, and Tom Stubbs placed

28   him in leg irons and wrist restraints.  Plaintiff claims the defendants placed his personal property in a

wooden cart, weighing approximately 250 pounds, and Deeds struggled to pull the cart behind him. After about 70 feet, Deeds ordered plaintiff to pull the cart approximately 100 yards to the property room.  Plaintiff claims that he told the defendant Deeds that he was physically unable to pull the cart, whereupon defendant Deeds became verbally abusive.  Defendant Adam Endel then ordered plaintiff to pull the cart, at which time plaintiff explained that he was physically unable to do so, whereupon defendant Endel ordered plaintiff to be taken back to his cell and ordered all of plaintiff's property to be destroyed.  Plaintiff states that he was informed that, per Endel's orders, his property was classified as unauthorized and would be destroyed or sent out.  Several days later, after he arrived at High Desert State Prison, plaintiff received some of his property, but most of his "most important and personal items, legal materials, religious and political literature, family photos, and contact information were all missing."  Plaintiff claims that defendant Richard Ashcraft, in furtherance of the conspiracy to harass and deprive plaintiff of his property, falsified official documents and caused plaintiff's property to be taken and destroyed.  Plaintiff alleges that defendants Endel and McDaniel denied his inmate grievances regarding the loss of his property. Plaintiff states that defendant Glenn Perkins was present during these events and failed to follow procedures by not calling another corrections officer to transport plaintiff's property.

### a. Eighth Amendment Claim

In alleging that defendants made plaintiff pull a 250-pound cart of property, while he was in leg irons and wrist restraints, and in disregard to his assertion that he was physically incapable of pulling the cart, plaintiff states a cognizable Eighth Amendment claim.  *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982);  *Frost v. Agnos*, 152 F.3d 1124, (9th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  Plaintiff states a cognizable Eighth Amendment claim against defendants Deeds, Donahue, Stubbs, and Endel.

### b. Due Process/Deprivation of Property Claim

Plaintiff claims that many of his possessions were taken during his transfer to HDSP.  An authorized, intentional deprivation of property is actionable under the Due Process Clause.  *See Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S.

422 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985).  An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes.  *Logan v. Zimmerman Brush Co.*, 455 U.S. at 436; *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987). Authorized deprivations of property are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987).  Plaintiff's allegations state a cognizable due process claim for the deprivation of his personal property against defendants Deeds, Donahue, Stubbs, Endel, Ashcraft, and Perkins.

### c.  Verbal Harassment Claims

Plaintiff claims that defendant Deeds became verbally abusive toward him when plaintiff explained that he could not pull the cart of property.  Mere verbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.  *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987).  Plaintiff's allegations that he suffered verbal harassment and abuse do not state a claim and must be dismissed with prejudice, as amendment would be futile.

### d.  First Amendment Claim

Plaintiff states in the caption of Count IV that defendants violated his First Amendment rights.  However, plaintiff has not articulated any facts to support any First Amendment claim in Count IV.  Plaintiff fails to state a cognizable First Amendment claim.  Plaintiff was previously given leave to amend this claim, and is still unable to state a claim.  Because further amendment would be futile, plaintiff's First Amendment claim is dismissed with prejudice.

### e.  Fourth Amendment Claim

Plaintiff states in the caption of Count IV that defendants violated his Fourth Amendment rights.  However, plaintiff has not articulated any facts to support any Fourth Amendment claim in Count IV.  Plaintiff fails to state a cognizable Fourth Amendment claim.  Plaintiff was previously given leave to amend this claim, and is unable to state a claim.  Because further amendment would be futile, plaintiff's Fourth Amendment claim is dismissed with prejudice.

### 5.  Count V

Plaintiff alleges that the defendants violated his Fifth, Eighth, and Fourteenth Amendment

14

rights.  Plaintiff claims that he was transferred to Nevada State Prison in October of 2008, for the purpose of being placed under the care of a urologist.  Plaintiff alleges that defendants Warden Bill Donat, Associate Warden Adam Watson, and Associate Warden James Baca created conditions that made it impossible for him to receive proper medical care and diagnosis.  Plaintiff alleges that defendants placed him in a remote cell at Nevada State Prison, with no intercom, instead of placing him in the infirmary.  Plaintiff alleges that he was taken to NNCC for treatment, but that staff lacked the proper medical equipment to diagnose him.  Plaintiff alleges that Dr. Randall Nixon examined him and prescribed medications, but plaintiff claims that he condition was misdiagnosed.  Plaintiff complains that medications prescribed caused his illness to worsen.  Plaintiff claims that during the medical examination, defendants Rick Stalnaker and John Does 5, 6, and 7 refused to remove his restraints, which impeded a proper medical exam.

Plaintiff claims that he was prescribed Elavil for pain.  Plaintiff told defendant Daniel that he could not take the medication because of a prior adverse reaction to it.  Plaintiff claims that Defendants King and Daniel threatened him by stating that his refusal to take Elavil would be considered a refusal of medical treatment.  Plaintiff then wrote a sealed letter to Dr. Nixon informing him of plaintiff's medical history and symptoms as well as his past experience with Elavil.  Plaintiff claims that King intercepted the letter, opened it, read it, and threatened plaintiff, which started a pattern of harassment and retaliation.  Plaintiff avers that defendants King, Daniel, and Snider conspired to retaliate against plaintiff by withholding vital information from Dr. Nixon, to prevent plaintiff from being properly diagnosed and treated.  He also claims that defendants Daniel and Taylor attempted to give plaintiff another inmate's medication in order to make him sick.  Plaintiff claims that defendant Long denied him prescribed medication which caused him pain.

Plaintiff claims that King and Snider cancelled his follow up exam with Dr. Nixon and sent him back to HDSP, ensuring that his illness would not be properly diagnosed or treated.  Plaintiff claims that defendant Donat ordered plaintiff transferred back to HDSP, knowing that he was very ill and had lost over 20 pounds.  Plaintiff also claims that defendants Stalnaker, and John Does 8, 9, 10, and 11, forced plaintiff to leave his property behind, placed him in full restraints in a tiny cage on the transport bus, and did not allow him water or use of the toilet during transport.  Plaintiff states

that on the trip he became very sick, bleeding from the nose, losing consciousness, and falling hard to the floor.  Plaintiff states that John Does 8-11 did nothing to help him or render immediate medical care.  Plaintiff states that John Doe 8 called defendant Donat, who ordered that no immediate care be given and that they drive plaintiff back to NNCC.

Plaintiff claims that, upon arriving at NNCC, defendants John Does 12 and 13 boarded the bus and struck him in the head while dragging him off the bus.  Plaintiff alleges that defendant John Doe 14 assaulted him in the infirmary while dragging him across the room by the leg irons.  He states that defendants Jane Does 1 and 2 accused him of being high and faking illness and did not examine him, instead leaving him to suffer with his injuries to the present date.  Plaintiff was then taken to an empty cell where defendant John Doe 15 forced him to strip naked under taser gun point. Plaintiff states that defendant John Doe 16 took his clothes.  Plaintiff claims that defendant John Doe 17 filmed the entire occurrence, and defendant Jane Doe 3 was present to and party to these events. Plaintiff further claims that defendant Warden James Benedetti actively participated in the cover up of the events that resulted in violation of Plaintiff's constitutional rights.

### a.  Eighth Amendment Deliberate Indifference Claim

Plaintiff claims inadequate medical care during his attempted transport to HDSP, and while he was incarcerated at NSP and NNCC.  Plaintiff has alleged facts sufficient to state a cognizable claim for deliberate indifference to serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The Eighth Amendment deliberate indifference claim may proceed against defendants Donat, Watson, Baca, Nixon, Stalnaker, King, Daniel, Snider, Taylor, Long, and Doe defendants.

### b.  Eighth Amendment Excessive Force Claim

Plaintiff claims the use of excessive force by defendants John Does 12 and 13, by striking him in the head and dragging him off the transport bus.  Plaintiff alleges that defendant John Doe 14 dragged him across the infirmary by the leg irons.  Plaintiff further claims that defendant Warden James Benedetti actively participated in the cover up of these events.  Plaintiff states a cognizable Eighth Amendment claim against defendants John Does 12, 13, 14, and Benedetti.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  The Eighth Amendment excessive force claim may proceed against defendants John Does 12, 13, 14, and

1    defendant Benedetti.

2                          **c.  Conspiracy Claim**

3           Plaintiff alleges that defendants conspired to deny him medical care in violation of his Eighth

4    Amendment rights.  Plaintiff has alleged sufficient facts to state a cognizable claim for conspiracy to

5    violate his Eighth Amendment right to medical care.  *See Burns v. County of King*, 883 F.2d 819,

6    821 (9th Cir. 1989); *see also Branch v. Tunnell*, 937 F.2d 1382, 1386 (9th Cir. 1991).  The

7    conspiracy claim may proceed against defendants Donat, Watson, Baca, Nixon, Stalnaker, King,

8    Daniel, Snider, Taylor, Long, and Doe defendants.

9    **II.  Motion for Appointment of Counsel (Docket #28)**

10          A litigant in a civil right action does not have a Sixth Amendment right to appointed counsel.

11   *Storseth v. Spellman*, 654 F.2d 1349, 13253 (9th Cir. 1981).  In very limited circumstances, federal

12   courts are empowered to request an attorney to represent an indigent civil litigant.  The

13   circumstances in which a court will make such a request, however, are exceedingly rare, and the

14   court will make the request under only extraordinary circumstances.  *United States v. 30.64 Acres of*

15   *Land*, 795 F.2d 796, 799-800 (9th Cir. 1986); *Wilborn v. Escalderon,* 789 F.2d 1328, 1331 (9th Cir.

16   1986).

17          A finding of such exceptional circumstances requires that the Court evaluate both the

18   likelihood of success on the merits and the plaintiff's ability to articulate his claims in pro se in light

19   of the complexity of the legal issues involved.  Neither factor is dispositive, and both must be

20   viewed together in making a finding.  *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991)(*citing*

21   *Wilborn, supra*, 789 F.2d at 1331).  The district court has considerable discretion in making these

22   findings.  The Court will not enter an order directing the appointment of counsel.  As discussed

23   below, there is little likelihood of success on the merits.  Plaintiff's motion for the appointment of

24   counsel is denied.

25   **III.  Motion for Temporary Restraining Order and Preliminary Injunction (Docket #29 & #30)**

26          Plaintiff has filed a motion for a temporary restraining order and motion for preliminary

27   injunctive relief, which was docketed as two motions.  (Docket #29 and #30).  Injunctive relief,

28   whether temporary or permanent, is an "extraordinary remedy, never awarded as of right."  *Winter v.*

                                                    17

1   *Natural Res. Defense Council*, 129 S. Ct. 365, 376 (2008).  "A plaintiff seeking a preliminary

2   injunction must establish that he is likely to succeed on the merits, that he is likely to suffer

3   irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,

4   and that an injunction is in the public interest."  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,

5   559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374).  The standard for a

6   permanent injunction is essentially the same as for a preliminary injunction, with the exception that

7   the plaintiff must show actual success, rather than a likelihood of success.  *See Amoco Prod. Co. v.*

8   *Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).  However, the Ninth Circuit has recently revived

9   the "serious questions" sliding scale test, and ruled that a preliminary injunction may be appropriate

10  when a plaintiff demonstrates serious questions going to the merits and the balance of hardships tips

11  sharply in plaintiff's favor.  *Alliance for the Wild Rockies v. Cottrell*, 613 F.3d 960 (9th Cir. 2010).

12          In the instant case, plaintiff seeks an order directing prison officials to remove his HRP

13  (High Risk Potential) classification, to release him from administrative segregation, and to provide

14  immediate medical care.  (Docket #29 and #30).  Although plaintiff has made allegations in the

15  amended complaint to state cognizable claims based on his continued HRP classification, continued

16  administrative segregation housing, and his medical care, plaintiff has not established that he is

17  likely to succeed on the merits of such claims.  Nor has plaintiff shown that he is likely to suffer

18  irreparable harm in the absence of preliminary injunction.  As such, plaintiff's motion for a

19  temporary restraining order and  preliminary injunctive relief is denied.

20  **IV.  Conclusion**

21          **IT IS THEREFORE ORDERED** that plaintiff's motion for the appointment of counsel

22  (Docket #28) is **DENIED.**

23          **IT IS FURTHER ORDERED** that plaintiff's motion for a temporary restraining order and

24  preliminary injunction (Docket #29 and #30) is **DENIED.**

25          **IT IS FURTHER ORDERED** that, as to **Count I** of the amended complaint, plaintiff's

26  First Amendment, Fourth Amendment, and religious discrimination claims are **DISMISSED WITH**

27  **PREJUDICE.**  Plaintiff's malicious prosecution **MAY PROCEED** against defendants Sorenson,

28  Stolk, Thompson, Willis, Curto, Christensen, MacArthur, and McDaniel**.**  Plaintiff's due process

claim **MAY PROCEED** against defendants Sorenson, Stolk, Thompson, and McDaniel.  Plaintiff's

Eighth Amendment claim **MAY PROCEED** against defendants Sorenson, Stolk, Thompson,

McDaniel, and Stogner.  Plaintiff's conspiracy claim **MAY PROCEED** against defendants

Sorenson, Stolk, Thompson, Willis, Curto, Christensen, MacArthur, and McDaniel.

> **IT IS FURTHER ORDERED** that, as to **Count II** of the amended complaint, plaintiff's

due process claim **MAY PROCEED** against defendants McDaniel, Neven, and Skolnik.  Plaintiff's

Eighth Amendment deliberate indifference to medical needs claim **MAY PROCEED** against

defendants McDaniel and Neven.  Plaintiff's supervisory liability claim **MAY PROCEED** against

defendants Skolnik and Bannister.

> **IT IS FURTHER ORDERED** that, as to **Count III** of the amended complaint, plaintiff's

Eighth Amendment conditions of confinement claim **MAY PROCEED** against Doe defendants 1-4,

and defendant Donat.

> **IT IS FURTHER ORDERED** that, as to **Count IV** of the amended complaint, plaintiff's

First Amendment claim, Fourth Amendment claim, and verbal harassment claim are **DISMISSED**

**WITH PREJUDICE**.  Plaintiff's Eighth Amendment claim **MAY PROCEED** against defendants

Deeds, Donahue, Stubbs, and Endel.  Plaintiff's due process deprivation of property claim **MAY**

**PROCEED** against defendants Deeds, Donahue, Stubbs, Endel, Ashcraft,  and Perkins.

> **IT IS FURTHER ORDERED** that, as to **Count V** of the amended complaint, plaintiff's

Eighth Amendment deliberate indifference claim **MAY PROCEED** against defendants Donat,

Watson, Baca, Nixon, Stalnaker, King, Daniel, Snider, Taylor, Long, and Doe defendants.

Plaintiff's Eighth Amendment excessive force claim **MAY PROCEED** against defendants John

Does 12, 13, 14, and defendant Benedetti.  Plaintiff's conspiracy claim **MAY PROCEED** against

defendants Donat, Watson, Baca, Nixon, Stalnaker, King, Daniel, Snider, Taylor, Long, and Doe

defendants.

> **IT IS FURTHER ORDERED** that the Clerk **shall electronically serve a copy of this**
> **order, including the attached Intent to Proceed with Mediation Form, along with a copy of**
> **plaintiff's amended complaint (Docket #25), on the Office of the Attorney General of the State**
> **of Nevada, attention Pamela Sharp**.  The Attorney General shall advise the Court within **twenty-**

one **(21) days** of the date of entry of this order whether they can accept service of process for the named defendants and the last known address under seal of the defendants for which they cannot accept service.  If the Attorney General accepts service of process for any named defendant(s), such defendant(s) shall file and serve an answer or other response to the amended complaint within **thirty (30) days** of the date of the notice of acceptance of service.

**IT IS FURTHER ORDERED** that if the Attorney General does not accept service of process for any named defendant(s), then plaintiff must file a motion identifying the unserved defendant(s), requesting issuance of summons for the unserved defendant(s), and specifying the full name(s) and address(es) of the unserved defendant(s).  Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service must be accomplished within one hundred twenty (120) days of the date the complaint is filed.

**IT IS FURTHER ORDERED** that the parties **SHALL DETACH, COMPLETE, AND FILE** the attached Intent to Proceed with Mediation Form on or before **thirty (30) days** from the date of entry of this order.

**IT IS FURTHER ORDERED** that henceforth, plaintiff shall serve upon defendants, or, if an appearance has been made by counsel, upon their attorney(s), a copy of every pleading, motion, or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to the defendants or counsel for defendants.  If counsel has entered a notice of appearance, the plaintiff shall direct service to the individual attorney named in the notice of appearance, at the address stated therein.  The Court may disregard any paper received by a district judge or a magistrate judge that has not been filed with the Clerk, and any paper which fails to include a certificate showing proper service.

Dated this 28th day of October, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

1

_____
Name

2

_____
Prison Number

3

_____
Address

4

_____

5

_____

6

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

7

8

_____,     )
                   Plaintiff,   )          Case No. _____
                                )
9

v.                              )          **NOTICE OF INTENT TO**
                                )          **PROCEED WITH MEDIATION**
10

_____       )
                                )
11

_____       )
                   Defendants.   )
12

_____)

13

        This case may be referred to the District of Nevada's early inmate mediation program.  The purpose of this notice is to assess the suitability of this case for mediation.  Mediation is a process by which the parties meet with an impartial court-appointed mediator in an effort to bring about an expedient resolution that is satisfactory to all parties.

14

15

16

1.      Do you wish to proceed to early mediation in this case? ____ Yes  ____ No

17

2.      If no, please state the reason(s) you do not wish to proceed with mediation? _____

18

_____

19

_____

20

_____

21

3.      List any and all cases, including the case number, that plaintiff has filed in federal or state court in the last five years and the nature of each case. (Attach additional pages if needed).

22

_____

23

_____

24

_____

25

4.      List any and all cases, including the case number, that are currently pending or any pending grievances concerning issues or claims raised in this case. (Attach additional pages if needed).

26

27

_____

28

_____

21

1 _____

2 _____

3 5. Are there any other comments you would like to express to the court about whether this case
   is suitable for mediation. You may include a brief statement as to why you believe this case
4 is suitable for mediation. (Attach additional pages if needed).

_____

5 _____

6 _____

7 _____

8

9 **This form shall be filed with the Clerk of the Court on or before thirty (30) days from the date of this order.**

10 Counsel for defendants: By signing this form you are certifying to the court that you have consulted with a representative of the Nevada Department of Corrections concerning participation in
11 mediation.

12 Dated this \_\_\_\_ day of _____, 20\_\_\_\_.

13 _____

14 Signature

15 _____

16 Name of person who prepared or
   helped prepare this document

17

18

19

20

21

22

23

24

25

26

27

28

22