UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARRITTE FUNCHES ) | |
| ) | |
| Plaintiff, ) | 3:09-cv-00343-LRH-VPC |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| E.K. McDANIEL, ET AL. ) | |
| ) | March 30, 2011 |
| Defendants. ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's emergency motion for temporary restraining order/preliminary injunction, and order for mediation (#46).[1] Defendants opposed (#53) and plaintiff replied (#59). The court has thoroughly reviewed the record and recommends that plaintiff's motion for emergency temporary restraining order/ preliminary injunction , and order for mediation (#46) be denied.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Marritte Funches ("plaintiff") is an inmate at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#46).[2] Plaintiff's first amended complaint names forty-nine defendants and alleges several violations, including "conspiracy, deliberate indifference to plaintiffs [sic] serious medical needs, denial of due process,

---

[1] Refers to the court's docket numbers. The court docketed a duplicate image of plaintiff's emergency motion at docket #47.

[2] While plaintiff resided at NNCC throughout the time the parties filed briefing for this motion, the court is unsure as to plaintiff's current location. It is the court's understanding based on the January 24, 20011 status hearing (#51), and defendants' status report filed on January 27, 2011 (#49), that plaintiff may be participating in a trial in California as a material witness until mid-April. Defendants are scheduled to provide a status update to this court on April 1, 2011 (#52), at which time the court will learn of plaintiff's current location.

false arrest, malicious prosecution, cruel and unusual punishment, assault, deprivation of property with no due process - just cause - or compensation [and] . . . intentional[] discriminat[ion] against plaintiff for his religious and political beliefs" (#25, p. 15).

Pursuant to 28 U.S.C. § 1915A, the court screened plaintiff's first amended complaint and allowed several of plaintiff's claims to proceed and dismissed many other claims (#31).  Without providing an exhaustive description of plaintiff's numerous claims, the court notes that plaintiff's complaint relates to his belief that he was falsely accused of the stabbing murder of another inmate, a crime for which he was acquitted, resulting in his classification as a "high risk potential" inmate (#25, p. 16-20).  Plaintiff believes this classification deprived him of his due process rights and the opportunity to receive medical treatment. *Id.* at 20-22.  Further, plaintiff believes this classification resulted in cruel and unusual treatment during transport from ESP to Nevada State Prison ("NSP") in September 2007 and from ESP to High Desert State Prison ("HDSP") in January 2008. *Id.* at 23-26.  Finally, plaintiff's complaint alleges violations of his Eighth Amendment right to receive medical treatment for a condition requiring the care of a urologist in 2008. *Id.* at 27-30.

Plaintiff's instant request for injunctive relief arises from events related to his transfer from ESP to NNCC in 2011 (#46).  Plaintiff claims that on January 4, 2011, officers Rick Rimington, Dennis Homan, M. Cardinal[3] forced him to transport his own property, while in shackles, across snow and ice covered walkways, despite plaintiff's medical condition. *Id.* at 1-3.  Plaintiff claims the officers threatened him with loss of his property if he could not transport it himself, mocked him when he slipped and fell, and that several other officers gathered to watch him struggle. *Id.* at 2. Plaintiff said he was injured during the event and that the injuries were not treated. *Id.* at 2-3.  Upon transfer to NNCC on January 6, 2011, officials placed plaintiff in the mental health unit ("MHU"), despite the fact that he is not a psychiatric patient. *Id.* at 3.  Plaintiff's property was taken from him during the time he was housed in the MHU. *Id.*  Plaintiff describes this treatment as "all part of the

---

[3] Notably, these officers are not listed as defendants in plaintiff's first amended complaint (#25).

2

'relentless' harassment and retaliation [he's] endured from this and another lawsuit." *Id.* at 3. Plaintiff requests the following relief:

> [T]hat this court order I be moved out of this psychiatric ward and placed somewhere I can be treated and receive all the rights/privileged [sic] of an administrative [sic] segregated prisoner with no disciplinary issues. And if my property is not "lost," that it be given to me in whole. And last, that this case be given over to mediation.

*Id.* at 5.

Defendants oppose plaintiff's motion, stating that "[p]laintiff's issues have been resolved, thereby rendering [his motion] moot" (#53, p. 2). Specifically, defendants explain that defendant was transported to NNCC from ESP "for evaluation/examination regarding certain medical issues." *Id.* at 3. Plaintiff "was placed in the MHU due to the lack of bed space at the facility" and forbidden access to his property, "as it may pose a threat to the safety and/or security of the inmate, other inmates and/or staff." *Id.* NNCC officials removed plaintiff from the MHU on or about January 19, 2011, a fact defendants state that plaintiff confirmed at the January 24, 2011 hearing before this court. *Id.* Plaintiff also stated at the hearing that he had received his property.[4] *Id.*

In plaintiff's reply, he argues again that he faces "relentless" retaliation and harassment for filing this action and another lawsuit, and he requests the court's protection (#59, p. 2). He identifies "Dennis Homan and Rick Rimington [as] the lead antagonists in these threats, retaliation, etc.," and notes that officer Rimington is named as a defendant in case number 3:10-cv-127-LRH-VPC. *Id.* at 3. Plaintiff also comments that officer Homan is named as a defendant in the same suit. *Id.* at 4. Plaintiff requests that the court "grant this motion, and order that [he] be housed here at NNCC or some other prison until this case is resolved or otherwise settled." *Id.* at 3.

Plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-*

---

[4] The court reviewed the recording of the January 24, 2011 hearing (#51). During the hearing plaintiff reported that he did not have his property for an unknown number of days, but that he had since received his property, presumably because he was no longer housed in the MHU. Plaintiff did not state explicitly that he was released from the MHU.

3

*Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A.      Discussion**

    **1.      Temporary Restraining Order Legal Standard**

A temporary restraining order is available when the applicant may suffer irreparable injury before the court can hear the application for a preliminary injunction. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2951 (3d. 1998); *see* Fed. R. Civ. P. 65(b). Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347, n.2 (1977); *Los Angeles Unified Sch. Dist. v. United States Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981).

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 688-90 (2008) (citations and quotation omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, --- U.S. ---, ---, 129 S.Ct. 365, 376 (2008) (citation omitted). The instant motion requires that the court determine whether plaintiff has established the following: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 129 S.Ct. at 374 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 622 F.3d. 1045, 1049-50 (9th Cir. 2010); *see also Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 129 S.Ct. at 392 (Ginsburg, J., dissenting) ("[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief

1  based on a lower likelihood of harm when the likelihood of success is very high . . . This Court has
2  never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 622F.3d.
3  at 1049. In light of the *Winter* decision, however, the Ninth Circuit has indicated, "[t]o the extent
4  our cases have suggested a lesser standard, they are no longer controlling, or even viable." *Am.*
5  *Trucking Assocs. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009). Accordingly, plaintiff is
6  required to make a showing on all four of the preliminary injunction requirements.

7  An even more stringent standard is applied where mandatory, as opposed to prohibitory
8  preliminary relief is sought. The Ninth Circuit has noted that although the same general principles
9  inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well
10 beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing
11 a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir.
12 1984). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and
13 the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson*
14 *v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979). "[I]n doubtful cases" a mandatory injunction
15 will not issue. *Id*.

16 Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must
17 satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

22 18 U.S.C. § 3626(a)(2). Thus, Section 3626(a)(2) limits the court's power to grant preliminary
23 injunctive relief to inmates. *Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir.
24 2000). "Section 3626(a) . . . operates simultaneously to restrict the equity jurisdiction of federal
25 courts and to protect the bargaining power of prison administrators-no longer may courts grant or
26 approve relief that binds prison administrators to do more than the constitutional minimum."
27 *Gilmore*, 220 F.3d at 999.

1 **B.    Analysis**

2    Plaintiff seeks a temporary restraining order or preliminary injunction mandating his transfer
3 from the MHU at NNCC, his placement in a unit where he will receive the same treatment as any
4 other inmate without a disciplinary history who is housed in administrative segregation, return of his
5 property, and an order for mediation (#46, p. 5). Defendants oppose the motion, stating that plaintiff
6 has already been moved out of the MHU and his property has been returned rendering plaintiff's
7 motion moot (#53, p. 2). Defendants also argue that plaintiff does not face irreparable injury. *Id.*
8 Plaintiff's reply requests that the court order that he be housed at NNCC until the instant matter is
9 resolved (#59, p. 3, 6). Plaintiff argues that this is necessary because numerous NDOC officials,
10 namely officers Rimington and Homan, force him to endure ongoing harassment and retaliation due
11 to the filing of this suit and the related matter, 3:10-cv-00127-LRH-VPC, in which the officers are
12 named as defendants. *Id.* at 4.

13    As an initial matter, the court notes that this is plaintiff's third request for injunctive relief
14 in the instant case (#s 7, 8 & 29). The two previous motions were denied (#26). Plaintiff also filed
15 a motion for temporary restraining order in his other case, to which he refers in the instant motion,
16 requesting that the court mandate the return or replacement of property he claims defendant
17 Rimington wrongfully confiscated, transfer plaintiff to NSP to prevent further harassment and
18 retaliation, and prohibit plaintiff from transporting his own property in shackles (3:10-cv-00127-
19 LRH-VPC, #10). This court recommended that this motion also be denied (3:10-cv-00127-LRH-
20 VPC, #19).

21    The court observes that plaintiff may misunderstand the concept of injunctive relief.
22 Although the Ninth Circuit has not addressed the issue directly, other circuits have repeatedly held
23 that a plaintiff seeking injunctive relief must show "[a] relationship between the injury claimed in
24 the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470,
25 471 (8th Cir. 1994); *see Little v. Jones*, 607 F.3d 1245, 1250-51 (10th Cir. 2010); *Colvin v. Caruso*,
26 605 F.3d 282, 299-300 (6th Cir. 2010) (no preliminary injunction where motion for relief was based
27 on facts and circumstances entirely different from initial claim); *Omega World Travel, Inc. v. Trans*
28 *World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) (same).

1    With this guidance in mind, the court first advises plaintiff that his two cases are distinct. The facts alleged in one case cannot support injunctive relief in the other. For example, the facts of plaintiff's case against defendant Rimington, which allege that defendant Rimington engaged in retaliatory behavior against plaintiff, cannot support injunctive relief in the instant action, which does not name Rimington as a defendant or allege that he participated in retaliatory behavior against plaintiff. Second, as noted above, injunctive relief is to be used to address issues related to the underlying violations presented in the complaint. In this case, plaintiff alleges a variety of violations due to his classification as a high risk potential inmate. However, the instant motion complains of plaintiff's temporary placement in the MHU at NNCC and his related property deprivation, unrelated to plaintiff's classification as a high risk potential inmate. The court understands that plaintiff attempts to relate these issues by arguing they are all examples of the "relentless" retaliation and harassment he faces for filing this action and another lawsuit, but the court is not convinced that such a relationship between these matters exists. Plaintiff is not permitted to file a complaint in federal court and then use that action as a forum for airing his unrelated grievances about incarceration. Such complaints are properly lodged using the prison grievance system and, if they remain unresolved, by filing a new action.

Finally, the court addressed plaintiff's request for an order for mediation at its January 24, 2011 hearing. At that time, the court noted that while this case would not be appropriate for the early inmate mediation program, due to the complexity and number of the issues raised in the complaint, the court would be amendable to hosting a settlement conference in the future. The proper mechanism by which to ask the court to convene a settlement conference in the future is not a motion for a temporary restraining order or injunctive relief, but rather a motion requesting a settlement conference.

The court now turns to the merits of plaintiff's request for injunctive relief.

**1. Likelihood of Irreparable Harm**

"Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 129 S. Ct. at 375. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent

7

1  with our characterization of injunctive relief as an extraordinary remedy that may only be awarded
2  upon a clear showing that the plaintiff is entitled to such relief." *Id.* (quoting *Mazurek v. Armstrong*,
3  520 U.S. 968, 972 (1997) ( per curiam)).  Courts generally look at the immediacy of the threatened
4  injury in determining whether to grant preliminary injunctions." *Privitera v. Cal. Bd. of Med.*
5  *Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991).

6  Here, plaintiff has not demonstrated that he is in immediate danger of irreparable injury.  In
7  fact, any injury plaintiff potentially faced by being housed in the MHU without his property has
8  already been addressed by NDOC.  According to defendants' opposition and plaintiff's statements
9  made to this court on January 24, 2011, plaintiff has been moved from his temporary placement in
10 NNCC's MHU and he now has his property.  As for plaintiff's request that he be placed "somewhere
11 [he] can be treated and receive all the rights/privileged [sic] of an administratively segregated
12 prisoner with no disciplinary issues," the court is unwilling to order such relief.  First, to the extent
13 that plaintiff is requesting placement in a specific prison, plaintiff does not have a constitutional right
14 to be housed in a particular institution.  *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("[A]n
15 inmate has no justifiable expectation that he will be incarcerated in any particular prison within a
16 State . . . .").  Second, as the parties explained to the court during the January 24, 2011 hearing,
17 plaintiff is likely to be moved several times over the next month, due to the requirement that he
18 appear in another jurisdiction to participate as a material witness in an ongoing trial.  Given these
19 unusual circumstances, the court declines to intervene in the NDOC's transportation and housing of
20 plaintiff during this time, as there are no doubt sensitive issues of institutional and inmate security
21 that must be addressed by NDOC officials.  Further, plaintiff has not demonstrated that he faces
22 harm due to his current housing arrangement at NNCC so intervention is not warranted.

23 Therefore, this factor weighs in favor of defendants' position.

24 **2.  Likelihood of Success on the Merits**

25 To obtain a preliminary injunction, plaintiff must offer evidence that there is a likelihood he
26 will succeed on the merits of his claim.  *Johnson*, 72 F.3d at 1430.  "Likelihood of success on the
27 merits" has been described as a "reasonable probability" of success.  *King v. Saddleback Junior*
28 *College Dist.*, 425 F.2d 426, 428-29 n.2 (9th Cir. 1970).  Here, plaintiff's request for injunctive relief

1 relates to his transfer to NNCC from ESP in 2011 and the denial of access to his property while
2 housed in the MHU at NNCC. Plaintiff's complaint does not allege facts related to this incident, nor
3 does it name as defendants the officers mentioned in the instant motion. Therefore, plaintiff's
4 motion raises a novel legal claim, which the court will not address. *McMichael*, 709 F.2d at 1273
5 n.4 (holding that a court need not consider claims that are not included in the complaint).
6     This factor weighs in favor of defendants' position.
7     **3.  Balance of Hardships**
8     The balance of hardships does not tip sharply in plaintiff's favor, as the relief requested by
9 plaintiff in his motion has already been provided. Further, issuance of any preliminary injunctive
10 relief would require this court to significantly interfere with the internal processes of the NDOC.
11 Movement and housing of a prisoner in a maximum-security facility involves risks to the safety and
12 security of the institution. Given that the court must accord "substantial weight" to the effects of
13 injunctive relief on the operation of the prison, the court finds that the balance of hardships favors
14 the defendants. *See* 18 U.S.C. § 3626(a)(2).
15     **4.  Public Interest**
16     With respect to the public interest, the court must consider the public interest in issuing the
17 injunction against the public interest in not issuing the injunction. Here, the public is not served
18 where the court's order would compromise the safety and security of the prison, or where resolution
19 of the instant motion has already been provided.
20     Therefore, plaintiff's motion for temporary restraining order is denied.
21     **III. CONCLUSION**
22     Based on the foregoing and for good cause appearing, the court concludes that plaintiff has
23 not shown that he will suffer irreparable injury; rather, plaintiff has already been moved out of the
24 MHU in NNCC and has received his property, rendering his motion moot. As such, the court
25 recommends that plaintiff's emergency motion for temporary restraining order/preliminary injunction
26 (#46) be **DENIED**.
27     The parties are advised:
28     1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,

the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's emergency motion for temporary restraining order/preliminary injunction, and order for mediation (#46) be **DENIED**.

**DATED:** March 30, 2011.

_____
**UNITED STATES MAGISTRATE JUDGE**