**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARRITTE FUNCHES,<br><br>                Plaintiff,<br><br>vs.<br><br>GERALD THOMPSON, et al.,<br><br>                Defendants. | Case No. 3:09-cv-00343-LRH-PAL<br><br>**ORDER AND REPORT OF FINDINGS<br>AND RECOMMENDATION**<br><br>(Mtn for Ext'n - Dkt. #104)<br>(Mtn for TRO - Dkt. #113)<br>(Mtn to PI - Dkt. #114)<br>(Mtn to Extend - Dkt. #115) |

This matter is before the court on Plaintiff Marriette Funches' Motion to Extend Discovery Deadline (Dkt. #104), Defendants Richard Ashcraft's, James Baca's, Bruce Bannister's, James Benedetti's, Terri Curto's, Janice Daniel's, Terrance Deeds', Sean Donahue's Bill Donat's Adam Endel's, Kathy King's, Kay Long's, E.K. McDaniel's, Dwight Neven's, Glenn Perkins', Howard Skolnik's, Delmar Snider's, Rick Stalnaker's, James Stogner's, Tom Stubbs', Adam Watson's, Suzanna Taylor's, Gerald Thompson's, and Troy Willis' (the "NDOC Defendants") Limited Opposition (Dkt. #106), Defendants Mike Stolk's and Martin Sorenson's (the "non-NDOC Defendants") Joinder to the NDOC's Limited Opposition (Dkt. #107), and Plaintiff's Reply (Dkt. #109); Plaintiff's Emergency Motion for Temporary Restraining Order ("TRO") (Dkt. #113) and Preliminary Injunction (Dkt. #114)[1], the NDOC Defendants' Response (Dkt. #119), and Plaintiff's Reply (Dkt. #120); and the NDOC Defendants' Motion for Enlargement of Time to File Oppositions to Emergency Motion for TRO and PI (Dkt. #115). The court has considered the Motions, the Responses, and Replies.

///

///

---

[1] These Motions were filed as a single document, but because Plaintiff requests two different kinds of relief, the Clerk of Court entered them as two separate docket entries.

# BACKGROUND

## I.  Procedural History.

Plaintiff is a prisoner, proceeding pro se in this civil rights action.  He filed his Amended Complaint (Dkt. #25), pursuant to 42 U.S.C. § 1983, against forty-nine Defendants.  The court screened Plaintiff's Amended Complaint in a detailed Order (Dkt. #31) entered October 29, 2010, and directed service.  The court entered a Scheduling Order (Dkt. #43) on January 3, 2011, allowing the parties ninety days to conduct discovery.  On January 24, 2011, the court stayed the Scheduling Order for sixty days, or until April 1, 2011.  *See* Minute Orders ##51, 52.

On April 22, 2011, attorney Jeffrey Blanck appeared on behalf of Plaintiff.  *See* Notice of Appearance (Dkt. #67).  On May 27, 2011, the court held a case management conference and approved the parties' proposed case management report.  *See* Minute Order (Dkt. #79) & Scheduling Order (Dkt. #78).  The Order established a discovery cut off of October 25, 2011.  *Id.*  On July 25, 2011, Magistrate Judge Cooke recused herself from this case, and Magistrate Judge McQuaid was assigned.  *See* Dkt. ## 97, 98.  On August 16, 2011, the court approved the parties Stipulation (Dkt. #99) to dismiss Defendant Nixon.  *See* Order (Dkt. #100).  On September 15, 2011, this case was reassigned to the undersigned. *See* Dkt. #102.  On September 27, 2011, counsel for Plaintiff filed the Motion to Extend Deadlines (Dkt. #104) and a Motion to Substitute Attorney (Dkt. #105), which sought to remove counsel and allow Plaintiff to proceed pro se.  The court granted the Motion to Substitute, relieving Mr. Blanck as counsel of record and allowing Plaintiff to proceed pro se.  *See* Order (Dkt. #116).

## II.  Factual Allegations in the Amended Complaint.

Plaintiff alleges Defendants are officials or employees of the Nevada Department of Corrections ("NDOC") who violated his constitutional rights.  Plaintiff's Amended Complaint is factually complicated and alleges many claims.  The court will summarize the claims that survived screening.

### A.  Count One.

In Count One, Plaintiff alleges he was falsely accused of stabbing another inmate, Carl Green, to death at Ely State Prison in April 2004.  He was tried and acquitted of the murder charges in 2007. Plaintiff contends Defendants Martin Sorenson, Mike Stolk, and Gerald Thompson falsely testified that Mr. Green identified Plaintiff as his attacker.  Defendants Troy Willis and Terri Curto committed

perjury during trial, as did Defendants Thompson and Dr. Gene Christensen and at a preliminary hearing, by testifying to these false statements. He contends Defendants Sorenson, Stolk, and Thompson failed to take witness statements from people who could exonerate Plaintiff and failed to properly investigate the case. He also claims that Defendants Sorenson, Stolk, and Thompson paid a jail informant, James Beverly, to lie under oath against Plaintiff, and Defendant E. K McDaniel approved the payment but failed to ensure that the informant's information was credible. Plaintiff claims Green's death occurred during surgery, and Defendant Dr. Steven MacArthur conspired to cover the surgeon's malpractice. Plaintiff also claims that Ely State Prison chaplain James Stogner testified under oath that he feared for his safety in Plaintiff's presence. As a result of this testimony, Plaintiff contends he was forced to wear a 50,000 volt shock belt and wrist and leg restraints during the criminal proceedings.

      The court found Plaintiff's Amended Complaint alleged facts to support a claim for malicious prosecution against Defendants Sorenson, Stolk, Thompson, Willis, Curto, Christensen, MacArthur, and McDaniel. Second, Plaintiff sufficiently alleged a violation of his due process right to liberty against Defendants Sorenson, Stolk, Thompson, and McDaniel because these Defendants allegedly manufactured a non-existent witness whose "statements" were used to charge Plaintiff with the murder of Carl Green. As a result, Plaintiff was deprived of the opportunity to confront his accusers at trial. Additionally, Plaintiff was forced into twenty-four hour segregated housing because of the murder charge. Third, the court found Plaintiff's allegations that he was confined to his cell for twenty-four hours a day and forced to wear a 50,000 volt shock belt, both of which caused him physical harm and pain, stated an Eighth Amendment claim against Defendants Sorenson, Stolk, Thompson, McDaniel, and Stogner. Fourth, the court found Plaintiff stated a claim against Defendants Sorenson, Stolk, Thompson, Willis, Curto, Christensen, MacArthur, and McDaniel for conspiracy to maliciously prosecute Plaintiff.

      **B.**    **Count Two.**

      In Count Two, Plaintiff asserts that in April 2004, Defendant McDaniel placed Plaintiff in administrative segregation and classified as "High Risk Potential" ("HRP") without due process. He contends that even though he was acquitted of the murder of Carl Green, he remains classified as HRP

and continues to be housed in administrative segregation. Because of his HRP classification, Plaintiff's movements and medical care must be approved by Defendant McDaniel. Plaintiff alleges he has been denied medical treatment for his urinary tract problems because of his classification. After he was transferred to High Desert State Prison, the warden there, Defendant Warden Dwight Neven, conspired with McDaniel to keep Plaintiff classified as HRP, which impeded his ability to see a specialist outside of the prison. Plaintiff contends his complaints and pleas for relief were ignored by the Director of the NDOC, Defendant Howard Skolnick, and head of medical services for NDOC, Defendant Dr. Bruce Bannister.

The court found Plaintiff alleged facts to state a due process claim based upon his indeterminate confinement in administrative segregation and continued classification as HRP. Second, Plaintiff asserts a cognizable Eighth Amendment claim for deliberate indifference to serious medical needs against Defendants McDaniel and Neven, who were allegedly aware of Plaintiff's medical condition and requests for treatment. Third, the court found Plaintiff had alleged facts sufficient to state a cognizable supervisory liability claim against Defendants Skolnik and Bannister.

**C.    Count Three.**

Plaintiff alleges that in September 2007, Defendants John Does 1-4 transported him from Ely State Prison to Nevada State Prison. Because of Plaintiff's HRP classification, Does 1 and 2 placed Plaintiff in handcuffs with a black box tightly strapped to Plaintiff's wrist, to immobilize his hands and arms. He was placed in leg irons and padlocked inside a small steel cage in the transport bus, with little room to sit. He was not allowed water to drink or permitted to use the restroom during the twelve-hour trip. He informed Doe 1 about his urological issues, but he was not permitted to use the urinal. Plaintiff alleges he suffered kidney and bladder pain, thirst, and pain from the restraints. He sought medical attention due to the pain, and was diagnosed with an enlarged prostate. He contends these same restrictive conditions were imposed during the transport back to Ely State Prison from Nevada State Prison in October 2007 as well as on two other subsequent occasions. He maintains that he informed Defendant Warden Bill Donat about the conditions of his transportation. The court found Plaintiff alleged facts to state a deliberate indifference claim for violations of his Eighth Amendment rights against the Doe Defendants 1-4 and Defendant Donat, who was informed about the transport

conditions and allowed Plaintiff to be transported again under the same conditions.

### D.     Count Four.

Plaintiff contends that during his transfer from Ely State Prison in January 2008, Defendants Terrance Deeds, Sean Donahue, and Tom Stubbs placed him in leg irons and wrist restraints and put his personal property in a wooden cart, which weighed about 250 pounds. Defendant Deeds directed Plaintiff to pull the cart one hundred yards to the property room, while restrained. When Plaintiff explained he was physically incapable of doing so, Defendant Deeds became verbally abusive. He alleges Defendant Perkins was present and failed to call another corrections officer to move Plaintiff's property. Defendant Endel ordered Plaintiff to be taken to his cell and directed Plaintiff's personal property be destroyed. Although Plaintiff received some of his property, much of it was missing, and he alleges Defendant Ashcraft falsified documents classifying Plaintiff's property as unauthorized, causing it to be destroyed.

The court found Plaintiff alleged facts sufficient to state a claim under the Eighth Amendment against Defendants Deeds, Donahue, Stubbs, and Endel. Additionally, Plaintiff's allegations stated a cognizable due process claim for the deprivation of his personal property against Defendants Deeds, Donahue, Stubbs, Endel, Ashcraft, and Perkins.

### E.     Count Five.

Plaintiff alleges that in October 2008, he was transferred to Nevada State Prison in order to be seen by a urologist. He asserts Defendants Donat, Watson, and Baca created conditions that made it impossible to receive appropriate medical care–namely, these Defendants placed him in a remote cell with no intercom instead of in the infirmary. He states he was taken to Northern Nevada Correctional Center for care, but the staff there lacked necessary medical equipment to diagnose his condition. He claims he was misdiagnosed, and the medication prescribed by Defendant Dr. Nixon (who has since been dismissed from this case pursuant to the parties' stipulation) caused his illness to worsen. Plaintiff contends he was never examined properly because Defendants Stalnaker and Does 5-7 refused to remove Plaintiff's restraints.

Plaintiff was prescribed Elavil for pain, and he advised Defendant Daniel that he could not take it based upon a prior adverse reaction. Plaintiff alleges Defendant Daniel and King stated that refusing

to take Elavil would be considered a refusal of medical treatment. Plaintiff wrote a letter to Defendant Nixon advising the doctor of Plaintiff's prior experience with Elavil.  Plaintiff contends Defendant King intercepted the letter, opened and read it, and threatened Plaintiff.  Plaintiff alleges Defendants King, Daniel, and Snider conspired to retaliate against Plaintiff by withholding information from Doctor Nixon to prevent Plaintiff from receiving proper medical treatment.  He contends Defendants Daniel and Taylor tried to give him another inmate's medicine to make him sick and that Defendant Long denied Plaintiff his prescribed medication.

He asserts that Defendants King and Snider cancelled Plaintiff's follow-up exam with Dr. Nixon, and Defendant Donat sent Plaintiff back to High Desert State Prison, ensuring his illness would not be properly diagnosed or treated and knowing Plaintiff was ill.  He was transferred under the same conditions described above, and on the trip, he became sick–bleeding from the nose, losing consciousness, and falling on the floor.  He alleges Does 8-11 did nothing to help him and did not render immediate medical attention, upon orders from Defendant Donat.  When he arrived at High Desert, Doe Defendants 12 and 13 struck Plaintiff in the head while dragging him off the bus.  Doe 14 assaulted Plaintiff in the infirmary by dragging him across the room by his leg irons.  He contends Doe 15 forced him to strip naked in an empty cell under taser gun point.  Doe 16 took his clothes, and Doe 17 filmed the events, and Jane Doe 3 was present as well.  He claims Defendant Warden James Benedetti assisted in covering up the events enumerated in Count Four.

The court found Plaintiff stated an Eighth Amendment claim for deliberate indifference to serious medical needs against Defendants. Donat, Watson, Baca, Nixon, Stalnaker, King, Daniel, Snider, Taylor, Long, and Does.  Additionally, the court ordered that the Eighth Amendment excessive force claim could proceed against defendants John Does 12, 13, 14, and Defendant Benedetti.  Finally, the court found Plaintiff alleged sufficient facts to state a claim for conspiracy to violate his Eighth Amendment right to medical care against Defendants Donat, Watson, Baca, Nixon, Stalnaker, King, Daniel, Snider, Taylor, Long, and the Doe Defendants.

## DISCUSSION

**I.     Motion to Extend Deadlines (Dkt. #104)**.

Plaintiff's former counsel filed this Motion requesting a six-month extension of the Discovery

1  Plan and Scheduling Order deadlines.  Counsel asked for additional time because : (a) it took months to
2  get a copy of the transcript from Plaintiff's underlying criminal trial that is the basis of this suit; (b) he
3  believed the Attorney General failed to produce "voluminous documents" available for review in the
4  Attorney General's office; (c) depositions were scheduled in October 2011; and (d) a videotape of the
5  decedent and one of mistreatment of Plaintiff cannot be located and have not been provided to Plaintiff.
6        The NDOC Defendants respond that they have provided extensive disclosures to Plaintiff's
7  former counsel on a compact disc, including Plaintiff's Institutional file ("I-file"), Central file ("C-
8  file"), NOTIS records,[2] grievances, medical records, and other miscellaneous documents.  These
9  documents were produced subject to a stipulated protective order.  Funches is permitted to review most
10 of these documents, but he is not allowed to physically possess them.  Defendants also put documents
11 from Plaintiff's 2004 criminal case on a compact disk.  Plaintiff is not permitted to view the compact
12 disc because it contains confidential documents that cannot be shared with Plaintiff because of safety
13 and security reasons.  The NDOC Defendants state that Plaintiff can "kite"[3] the prison for review of his
14 I-file.  The NDOC Defendants state they are unaware of Plaintiff's request for videotapes.  Defendants
15 oppose the extension but ask that if the court is inclined to grant it that ninety days is more appropriate
16 than the six months Plaintiff requests, especially given Plaintiff's previous attempts to delay litigation
17 by representing himself.
18       The non-NDOC Defendants' Joinder (Dkt. #107) asserts that Plaintiff has a history of
19 manipulating the status of his representation to delay litigation.  They concur with the NDOC
20 Defendants that a ninety-day extension is appropriate.
21       Plaintiff replies that he is "completely in the dark" about his case, and he needs at least six
22 months to familiarize himself with it.  He claims he has not had access to the discovery the NDOC
23 Defendants produced to his former counsel, and there is much discovery left to undertake–namely, he

---

[2]NOTIS–Nevada Offender Tracking Information System–is the authorized formal reporting instrument for the NDOC and contains electronic records.  *See* www.doc.nv.gov/sites/doc/files/pdf/ar/AR121.PDF (last visited March 8, 2012).

[3]A kite is an Inmate Request Forms that inmates use to correspond with prison officials and administrative a medical staff.

1  needs to identify the twenty named Doe Defendants and numerous witnesses.  He has propounded
2  requests for documents and intends to serve other written discovery requests.
3        Plaintiff's Motion to Extend does not comply with LR 26-4.  The Motion does not provide a
4  specific description of the discovery that remains to be completed.  Plaintiff's reply states only that he
5  would like to propound written discovery and "acclimate [himself] to the case."  It appears that Plaintiff
6  essentially seeks to re-start the discovery period.  The deadline for filing a motion to amend the
7  Complaint to add parties ran on July 27, 2011, long before this motion was filed.  This case has been
8  pending for nearly three and a half years.  Accordingly, Plaintiff's Motion to Extend Deadlines (Dkt.
9  #104) is denied.

10  **II.    Plaintiff's Motion for TRO and PI (Dkt. ##113, 114).**
11        Plaintiff's Motion requests entry of a TRO and PI related to his transfer from the NDOC to the
12  Colarado Department of Corrections ("CDOC").  Plaintiff asserts that on November 1, 2011, he was
13  transferred from Ely State Prison to High Desert State Prison without a reason.  On November 8, 2011,
14  he was transferred to the CDOC.  He asserts the NDOC kept all of his personal property–including legal
15  files and money in his inmate trust account.  He believes these transfers were intentionally undertaken
16  by Defendants to make it impossible to litigate his pending cases.  On November 18, 2011, a CDOC
17  case manager informed him that the NDOC reported he had gang ties to the Sureno gang and to white
18  supremacist groups.  Plaintiff contends the NDOC imposed these labels to endanger his life. He states
19  that "if due to this, [he] were to be house in a cell, or a unit, with a majority of white supremists [sic].  I
20  believe the inference is clear."
21        Plaintiff's Motion requests a TRO/PI directing the Clerk of Court to serve his motion on
22  Defendants and mail Plaintiff various pleadings from this case and other cases.  Plaintiff also requests
23  Defendants be ordered to send Plaintiff's property and money to the proper authorities and contact the
24  CDOC and provide "real actual evidence" of Plaintiff's gang ties or remove the "false allegations and
25  lies" from his files.  Finally, Plaintiff requests this case, and all his other pending cases, be stayed for
26  forty-five days.
27        In response, Defendants assert that Plaintiff's grievances are unrelated to the relief requested in
28  his Amended Complaint, and therefore, cannot support injunctive relief.  Additionally, the funds in

Plaintiff's inmate trust account have been paid to Plaintiff, care of the CDOC. A check was issued by the NDOC and sent with Plaintiff's file to the CDOC. The check cleared on December 13, 2012. *See* Declaration of Michelle Wyland, attached as Exhibit B to the Response. With respect to Plaintiff's personal property, Defendants represent that it is in the property room at High Desert State Prison, and officials there are awaiting direction from the CDOC to send Plaintiff's property to him. *See* Declaration of Carter Potter, attached as Exhibit A to the Response. On the merits of Plaintiff's request for injunctive relief, Defendants argue Plaintiff has not addressed the four factors required to establish the issuance of a TRO or PI. Rather than seek injunctive relief, Plaintiff should have submitted a kite to the CDOC to address his property issues. Defendants state that a reasonable stay of these proceedings may be warranted until this issue is resolved.

Plaintiff replies that his Amended Complaint seeks relief from "an unyielding systematic pattern of abuse and harassment, including malicious prosecution, cruel and unusual punishment, assault, and deprivation of property without due process." Plaintiff notes he has filed other requests for injunctive relief and other lawsuits because of Defendants' conduct. He believes Defendants are attempting to interfere with and frustrate his attempts to prosecute this suit and others by separating him from his legal materials and have done so with "malicious intent." He contends he was deposed, but Defendants never provided a copy of the transcript and are generally uncooperative with the discovery process. Plaintiff believes he should have been transferred to a medium security prison, rather than a maximum security prison. He reiterates his request for a stay until he has received his legal files.

**A.     Applicable Legal Standards.**

A TRO is available when an applicant may suffer irreparable injury before the court can hear the application for a preliminary injunction. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2951 (2d ed. 2011); Fed.R.Civ.P. 65(b). Requests for TROs are governed by the same general standards that govern the issuance of a preliminary injunction. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 at n.2 (1977); *Los Angeles Unified Sch. Dist. v. United States Dist. Ct.*, 650 F.2d 1004, 1008 (9th Cir. 1981).

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as a matter of right. *Munaf v. Green*, 553 U.S. 674, 688-90 (2008) (citation omitted). Instead, in each case,

the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).  Its sole purpose is to preserve the status quo ante litem (the status that existed before the lawsuit) pending a determination of the case on the merits. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 203 (9th Cir. 2009).  Injunctive relief will only be granted where the requesting party demonstrates: (a) probable success on the merits; (b) the possibility of irreparable harm; (c) the balance of hardships tips in favor of the requesting party; (d) public interest favors granting the injunctive relief. *Winter,* 555 U.S. at 20; *LGS Architects, Inc. v. Concordia Homes of Nevada,* 434 F.3d 1150, 1155 (9th Cir. 2006); *Sony Computer Entertainment Am., Inc. v. Bleem, LLC*, 214 F.3d 1022, 1025 (9th Cir. 2000).

Prior to *Winter,* the Ninth Circuit applied a "sliding scale" test for issuing injunctive relief that allowed a movant to offset the weakness of one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell,* 632 F.3d 1045, 1049-50 (9th Cir. 2010); *see also Beardslee v. Woodford,* 395 F.3d 1064, 1067 (9th Cir. 2005).  After the Supreme Court's decision in *Winter*, the Ninth Circuit determined its sliding scale approach "survives . . . when applied as part of the four element *Winter* test." *Alliance,* 632 F.3d at 1131-32.  Thus, injunctive relief can be issued if the requesting party demonstrates either: (a) a combination of a likelihood of success coupled with the possibility of irreparable harm; or (b) the existence of serious questions going to the merits and the balance of hardship that tips sharply toward the requesting party, so long as the other two *Winter* elements are also met. *Alliance,* 632 F.3d at 1131-32 (citing *Lands Council v. McNair,* 537 F.3d 981, 986 (9th Cir. 2008).

Additionally, where mandatory, rather than prohibitory, injunctive relief is sought that "goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984); *see also Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir. 1979) (noting injunctive relief that goes beyond the status quo  "is particularly disfavored [] and should not be issued unless the facts and law clearly favor the moving party"); *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319-20 (9th Cir. 1994).  An award of mandatory injunctive relief will only be granted where "the facts and the law clearly favor the

moving party[,] and extreme or very serious damage will result." *Anderson,* 612 F.2d 1112, 1115 (9th Cir. 1975). In doubtful cases, a mandatory injunction will not issue. *Id.*

Finally, the Prison Litigation Reform Act mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. It provides:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). This section limits the court's power to grant preliminary injunctive relief to inmates. *Gilmore v. People of the State of California,* 220 F.3d 987, 998 (9th Cir. 2000). In *Gilmore,* the Ninth Circuit stated that section 3632(a) "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators–no more may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

**B.   Analysis.**

As an initial matter, the court does not have authority to enjoin the activities of entities that are not parties to this litigation–namely, the CDOC. *See Zapeda v. U.S. Immigration Serv.,* 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter over the claim; it may not attempt to determine the rights of persons not before the court"). To the extent that Plaintiff is requesting the court order the CDOC to remove information concerning Plaintiff from its files, it is recommended that request be denied.

**1.   Likelihood of Success on the Merits.**

To obtain injunctive relief, a movant must offer evidence that there is a likelihood he will succeed on the merits of his claim. *Johnson v. California State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995. Likelihood of success on the merits means a "reasonable probability" of success. *King v. Saddleback Jr. College Dist.,* 425 F.2d 426, 428-29 at n.2 (9th Cir. 1970). Here, Plaintiff seeks to enjoin conduct that is unrelated to the underlying lawsuit. His Amended Complaint alleges various violations of his constitutional rights pursuant to 42 U.S.C. § 1983. His grievances here concern his

personal property, and the prison's characterization of his gang status.  Injunctive relief addresses issues related to the violations presented in a complaint.  Although the Ninth Circuit has not directly addressed the issue, other circuits have repeatedly held that a plaintiff seeking injunctive relief must show "[a] relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington,* 42 F.3d 470, 471 (9th Cir. 1994); *Little v. Jones*, 607 F.3d 1245, 1250-51 (10th Cir. 2010); *Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010 (no preliminary injunction where motion for relief based on facts and circumstances different from initial claim); *Omega World Travel, Inc. v. Trans World Airlines,* 111 F.3d 14, 16 (4th Cir. 1997) (same).  Plaintiff has not addressed the merits of the claims in the Amended Complaint.  Although Plaintiff's Amended Complaint also alleges claims concerning the destruction of Plaintiff's personal property, the Defendants have stated his property is being held until CDOC tells NDOC where and how to send it.  Additionally, the funds from his trust account have already been applied to his new account with CDOC.  This factor weighs in favor of Defendants.

### 2. **Irreparable Harm.**

Plaintiff has also not shown he is likely to suffer irreparable harm in the absence of preliminary relief.  The Supreme Court clarified in *Winter* that a requesting party must show a *likelihood* of irreparable injury, and the *possibility* of irreparable is insufficient to support granting injunctive relief.  555 U.S. at 21 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy"); *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1127 (9th Cir. 2009).  Although Plaintiff claims he has been falsely labeled as having gang ties to the "Sureno gang" and white supremacist groups, the harm he fears is speculative.  He states "if . . . I were to be housed in a cell, or a unit, with a majority of white supremacists, I believe the inference is clear."  Plaintiff believes that because he is a "Muslim, sometimes Buddhist" African American with prominent tattoos "expressing pride in his African heritage," he could be harmed *if* he were housed with white supremacists.  Additionally, Plaintiff's concerns about his personal property appear to be moot.  He has received the funds from his inmate trust account in the NDOC.  The NDOC is working with the CDOC to ship the rest of Plaintiff's personal belongings to him.  Because Plaintiff has not shown a likelihood of irreparable injury, and this factor weighs in favor of Defendants.

### 3. Balance of Hardships.

The balance of hardships does not tip sharply in Plaintiff's favor. Issuance of any preliminary injunctive relief concerning the NDOC's or the CDOC's security classification of Plaintiff would require the court to interfere with the internal process and procedures of both the NDOC and the CDOC. A state's Department of Corrections is in a better position than the court to determine whether an inmate poses a safety or security risk to the facility, its staff, and other inmates. Plaintiff has attached documentation establishing why he was transferred and why he was housed where he was housed. *See* Notice for Administrative Segregation Hearing, attached to Reply as Exhibit A. Because the court must accord "substantial weight" to the effects of injunctive relief on the operation of the prison, the court finds the balance of hardships favors the Defendants.

### 4. Public Interest.

The court must consider the public interest in issuing the injunctive relief against the public interest in not issuing the injunction. The public is not served where the court's order would interfere with the prison's operations and potentially endanger prison staff or other inmates.

Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion to Extend Discovery (Dkt. #104) is DENIED.
2. Defendants' Motion to Extend Time (Dkt. #115) is GRANTED.

**IT IS RECOMMENDED** that Plaintiff's Motion for TRO/PI (Dkt. ##113, 114) be DENIED.

Dated this 10th day of April, 2012.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

### NOTICE

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court. Pursuant to Local Rule of Practice (LR) IB 3-2(a), any party wishing to object to the findings and recommendations of a magistrate judge shall file and serve *specific written objections* together with

points and authorities in support of those objections, within fourteen days of the date of service of the findings and recommendations. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). The points and authorities filed in support of the specific written objections are subject to the page limitations found in LR 7-4.